Mr. Barrett, are you ready to proceed? Good afternoon, your honors, counsel, and may it please the court. John Barrett representing the people of the state of Illinois. We're here today on an interlocutory appeal of the trial court's denial of the people's motion in Lemonade to admit statements of the murder by wrongdoing. The court's ruling was against the manifest weight of the evidence because it rests on a fundamentally flawed premise that it did not receive evidence showing that Ms. Bell or defendant were unhappy with their current support arrangement. That conclusion is directly contradicted by the overwhelming circumstantial evidence presented at the evidentiary hearing. The people will demonstrate that the trial court's ruling must be reversed for three reasons. First, the court committed legal error by misapplying Pupil v. Peterson, which requires that preventing reasonably anticipated future testimony need only be a part of the motive for the victim's murder, not the entire motive, but a part of the motive, and mandates that intent can be inferred from circumstantial evidence as opposed to direct evidence. And the defendant's conduct, right? Correct. And the conduct. And the defendant argued and argued before this court that there was no evidence that the victim was unhappy about the child support arrangement. Is that consistent with the evidence in the case? That is not consistent with the evidence in the case. And I will jump right into that. Let me just kind of go through two and three before I get there. The second part of that. Yeah. If even if that were the case, does that undermine the state's theory that part of the motive was child support, even if the victim appeared to be happy? Like in the Hansen case, everybody thought Eric Hansen was a wonderful young man, he was on a path to success, and then he kills four relatives. Right. So what does that have to do with how things look on the outside aren't necessarily what's reflected. And that's especially true in domestic violence cases, isn't it? Absolutely. And of course, this case involves the worst kind of domestic violence, the murder of the victim. So for the second point, the court's factual findings are against the manifest weight of the evidence, ignoring the clear pattern of escalating conflict, defendant's hostility to formal proceedings, and his pattern of lies to conceal his relationship with Bell. And third, the court exceeded its authority by usurping the jury's exclusive role in assessing the credibility of the statements. Now, rather than just reciting the facts, let's just kind of target specific facts and statements and examine why the trial court's ruling here was against the manifest weight of the evidence. Let me ask you something and maybe you can address this. Yes. The statements that the state was trying to get in forfeiture by wrongdoing, the statement that she wasn't happy or she was worried or he was worried she was going to testify against him in a child support case. Does it have to be that specific or could it have been he was going to testify in a child support case or testify in a case against him with his wife or do we need that specificity? We don't have to have that specificity. It's good if it exists. If it exists, yes. But that's not necessary for determination of the intent. Go ahead. So a finding is against the manifest weight of the evidence where the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary or not based on the evidence presented. Now, Detective Jeff Konings at the hearing, he presented the victim's statements through the contents of police reports and witness interviews that he had conducted and kind of pointed in on one of the first critical aspects of the timeline when you're looking at this relationship is in 2001 when the victim initiated child support proceedings. There was clear evidence that the defendant was hostile to this. On December 11th of 2001, she obtained an order for the defendant to submit to DNA testing. And at that facility, and she was also submitting to the test that day, but at the facility that day, the child services and child support enforcement was there, Kim Meese, and she provided statements to officers that the defendant was so hostile that day that the victim had to be escorted to her vehicle afterwards and was frightened. She was afraid of him. And it actually resulted in a change in policy. So the policy of the agency changed because of this incident. And then, so here's what the trial court had to say about that. Regarding the 2001 DNA testing incident and its ruling, the trial court immediately minimized it, writing, the court heard no evidence about what specific observations Ms. Meese made. Boom. End of story. Nothing to see here. I didn't see or see any evidence about specifically what Ms. Meese thought. She said that the state did not elaborate, the witness did not elaborate on what it was that caused her to believe that the defendant was scaring the victim and that he was angry. I just gave her conclusions, but no specific detail. Correct. That could have been asked on cross-examination. It could have been. But we know that under People v. Peterson, evidence, any evidence of hostility toward prior proceedings is evidence of intent on the defendant's part. That is strong evidence of intent. That shows that. And then, so for the trial court to just dismiss this change in policy, I mean, that's a big deal that the agency changed its policy because this was such a volatile thing that happened. When Kim Meese testified, did the defendant object to the lay opinions about the victim being afraid and the defendant being angry? Was there any objection? I mean, those opinions came in uncontested. They were lay opinions, right? Right. And this is Jeff Koenig's offering testimony about the police reports and then witness interviews. So this is detectives who are testifying about these other witnesses. Counsel, is premeditation relevant? Motive and intent are the only relevant considerations. We're looking purely at motive and purely intent. That could certainly help the analysis. Well, when you go to preparation, money was at the heart of what was going on between them. Their romantic relationship had kind of ended. He was no longer coming upstairs. He was just saying, I'll bring the money. He'd bring smaller denominations. The one time when somebody else grabbed the money for her, it was $400. But this time, it was $12,000. Right. So the night that she was murdered, just prior to her murder, he had promised to deliver $12,000 to her. Now why? Because her car had been repossessed for the second time. These payments that he had been giving her, direct cash payments, were so insufficient that she couldn't meet her minimal $75 car payment. And this was the second time, I think it was four days prior to this evening. It was May 8th of 2003. But he had promised to deliver $12,000 so she could buy a new car. Did that happen? No. She was murdered that night. So we know there's a strong connection between finances and her death. Because they both collided that night. I mean, it's plainly apparent, based on all the evidence presented at the hearing, that there was clear tensions. The victim had told her friends and there were statements to the effect that she had told the defendant that either support us or I will get child support from you. I will reinitiate proceedings. In fact, I will go back to court and I will garnish her wages, which she had already done. It's important to note that earlier in 2001 when she had initiated the proceedings and after the DNA test confirmed his paternity, there was a good period where his wages were being garnished. And she had that. But he was able to influence her to drop that case and then accept direct payments from him, cash payments. And when he was first interviewed the day after, was it the 9th or the 10th, when he was first interviewed by Gonzales, he denies that he's paying any more child support. In fact, he says he threatened to sue her if she did not stop the payment or the garnishing. Right. And he denied paternity. He was denying paternity during his police interviews. Even in 2022, he was still awaiting results. Counselor, let me ask you this. Is the lack of legal proceedings a problem with the doctor enforcing her by wrongdoing? It is not a problem. And the reason it's not a problem is because we want to prevent situations exactly like what happened here. So she had not gone back to court to initiate formal proceedings yet. She had threatened that she would do so. So she was not poised to be a witness, if you will? Not at that time. But the standard is whether reasonably anticipated future proceedings can be inferred. Like in Hansen, there was no pending theft action or theft complaint. But Hansen was worried that if his parents were told, the money would stop and he'd be charged. Right. But in a case like this, if we require formal proceedings to have been initiated, then a victim who is in this exact situation saying, hey, I need child support, I'm going to go back to court if you don't pay me, and then the defendant kills her, which is what happened here, you know, that would be detrimental to the forfeiture by wrongdoing foundation, the whole principle of it. So. Counsel, the burden on appeal is we need to find that the trial court's ruling was against manifestly the evidence. What evidence do you think we should, we The opposite conclusion was clearly apparent. So we've discussed some of the evidence that was presented. And after having reviewed all of this evidence of, you know, the volatility of the DNA test, defendant influencing her to drop the prior child support so he could give her cash payments, but then not pay her. So her car's repossessed twice and just insufficient payments. Trying to obviously manipulate the witness and control her. Obviously, this is a situation where a defendant was isolating her that month before her murder. Instead of coming into the apartment and coming and giving cash payments in front of others, or as he had done before, a month before she was murdered, her sister, Latasha, gave statements to officers that he's refused to come inside and he had her come outside, away from everybody. So that last month he was kind of isolating her away, having private conversations with her, trying to manipulate the situation in ways that people weren't privy to. So this is a, the isolation factor here is very strong. And the trial court made no mention of it. There's nothing in her ruling about that. When people leave theaters, sometimes it's significant. How could he be sure that that was for isolation as opposed to his anonymity in seeing her? I mean, he didn't want everyone to see him, her with him, because he was married. Well, he certainly didn't want anyone to see him kill her. That goes without saying. But, I mean, how do you know that the reason for him not coming up to the apartment is because he was isolating her as opposed to protecting himself from being viewed with another woman? Well, I think a reasonable inference from the evidence is that there was a stark change in the behavior there, prior to the murder. So the fact that this change of being alone with her is a sudden new thing that happens just before he kills her, that does show that they're connected. Well, it's not just before he killed her. Certainly that night. Certainly that night. He saw that, that he wasn't, he wasn't going in. Exactly, exactly. Another point that, I don't know if you've talked about this in your brief, but didn't Taisha tell one of her friends that she thought she was pregnant again? She did, yes. And so, if presumably it's the defendant who's the putative father, he's going to have to go through another DNA test and his payments, whatever they are going to be, are going to be doubled. Correct. If he was the father. The trial court did not comment. If he was indeed the father, yes. Well, she was dating someone else too, wasn't she? Right, right. May I ask, and is there another motive for the alleged killing? You can continue. Can I finish that one? Yes, of course. Okay. It doesn't have, so the intent to prevent future, or reasonably anticipated future testimony doesn't have to be the sole motivation. It can be just one factor among many. And in this case, that's exactly what it was. The defendant had a number of reasons, but we're only requiring just that this is a factor, not the factor, which lowers the burden. It's easier to meet that here, where this is a preponderance standard at the motion in limine to admit statements. The defendant's wife already knew about Taisha, because Taisha went over to their home and confronted him in the presence of his wife, right? Correct. Go ahead, I'm sorry. I have finished my thoughts. Do you want to just sum up before you sit down? Yes, so the people would request that this court find that the trial court's decision in denying the motion in limine was against the manifest weight of the evidence, and reverse and remand back to the trial court to admit the statements as detailed in the people's motion in limine. Thank you. If it pleases the court, Attorney Adam Braun, I am here for the defendant Appellee Prince Cunningham. And Judge, I would submit to the court that consistent with our briefs, we are strongly arguing that the lower court's ruling on the forfeiture by wrongdoing motion was reasonable, was careful, was after a full evidentiary hearing over multiple days, and was consistent with relevant case law. Now, rather than get into the facts, I do want to, if I can, address the points that were raised. People v. Hanson does stand for the proposition we don't dispute that there need not be an active proceeding at issue. I would tender to the court, however, that the scope of the facts, it is still a factual inquiry. For example, in people v. Hanson, I believe that was a theft of a mother's credit card by a son who later killed her, and the implication was that she was killed to prevent her from going to the police to report the theft. Certainly a factual inquiry, the facts in that case are relevant to prove intent. If this murder were to occur in Hanson two years, three years, four years removed from the theft, the evidence of intent to prevent her testimony becomes diminished. In this case, I hope it's clear from the record, the lower court, in a 14 or 15-page ruling, went through the complete record of a two-day evidentiary hearing. This matter was also briefed by both parties. The court gave consideration to a number of factors in relation to prong one in regards to the wrongdoing itself, and then proceeded to prong two, where it also considered multiple factors or a number of evidentiary issues that were relevant for the court, gave careful consideration to it. Let me check. In one particular area with the court's ruling, which is puzzling to me, the trial court said she could not conclude that, I forget the way you pronounce the woman's last name, Yonoko, it's Jamika, Taisha, she could not conclude that the statement that he either supported Taisha and their children or she would get support from him, she could not consider that a threat because Taisha was not having problems getting child support from the defendant. But she doesn't even consider the fact that she couldn't pay a $75 car payment on two occasions. She got her car repossessed twice. And she also told friends that she thought she was pregnant again. And the defendant's initial statement to the police, he talks about the fact that he was upset with the fact that his wages were garnished for child support. And then he tells a series of lies to the police. How can you say that the statement proved by a preponderance of the evidence that it was at least part of the motive for killing Taisha? So, Judge, in evaluating the factual record of a domestic relationship, it involves multiple factors. Animosity alone in the litigation made present in every... The fact that a woman appears to be happy with her life, does that exclude the possibility that she's a victim of domestic violence? Certainly not. I mean, we see it all the time in domestic cases. All the time. It's routine. Correct. The issue that I think the appellants take with the appellant's argument is, the criticism of the lower court emphasizes that some of these implicit issues in regards to the relationship were not considered, despite clear guidelines from Peterson and Giles that in domestic cases, you're not just looking at the actual steps the victim took in regards to the litigation, but you want to look at the scope and dynamics of the relationship itself. The reason why this statement by Ms. Juan Monsencio was important was, it was argued veritably by the state at the motion that this statement, the single statement that either you support us or I'll get support from you, was evidence of escalating demands. That was a central part of their argument to Judge Yadler, was that there was escalating demands which then led to the focus on the defendant's intent. And what we argue, when you look at the facts of that conversation, it was in an interview with a detective where it was asked to Ms. Juan Monsencio, did Ms. Bell, who you live with and spoke to frequently, did she ever voice any concerns about support? She said, no. She never brought up support on her own accord. It was only asked of her. She said, no. And then it was a follow-up, well why is that? Ms. Juan Monsencio said that Ms. Bell was the type of person who was going to voice concerns if she wasn't getting support. And in support of that statement, she said, and there was an incident, it was undated, we don't know when it was, which is irrelevant to the court. For the purposes of this proceeding, we presume that the statement was made, right? For purposes of this proceeding, yes. Yes. And let me ask you this. After Taisha was murdered, the defendant wasn't paying child support, was he? So the child support does go to the child. If you file a motion in limine to preclude the state from introducing any evidence involving any child support cases initiated by the mother of Taisha Bell, that's a common, page 118 of the common law record. Sure. Why was that motion filed if child support was not part of the motive? Well, this is still a subject of trade. One would argue that the child, if child support was really the motive, the fact that it continues may actually be a fact that has come all the way, is relevant for as a defense. I understand the court's point, but I do believe that the scope of the relationship and the scope of any sort of disagreements is relevant to the intent to prevent testimony. When Eric Hansen's mother and father were murdered and his sister Kate was murdered, he didn't know that Kate had revealed to her sister his animosity towards Kate because Kate threatened him. Everybody in the world thought Eric Hansen was a great guy. You know, he's going to do fine in life. So the fact that the victim, Taisha, is projecting happiness against her, that she's satisfied, does that really mean anything? Well, I think it's relevant in the regard of the doctrine that the appellants were really pushing on that the lower court failed to take into account the dynamic of the relationship. And in that regard, I think it is relevant that this was not, Ms. Bell was not being coerced. She was not being silenced. She was, in fact, the type of person who, if support was an issue, she would have spoken out about it. And therefore, at what point, I think, at what point does the continuation of disagreement without incident suggest to the court that this no longer becomes motive for the wrongdoing? I think that's why I asked in the beginning, I asked, does it have to be specifically the child's support in order to proceed with the doctrine of forfeiture? Does it have to be that specific? The wrongdoing does have to be, my understanding is the wrongdoing has to be specific in regards to the, the question is of the defendant's intent. Right. Well, you have the $14,000 he was giving her a little bit here and there, and then he said, okay, I'm going to give you $14,000. Is that relevant? How that, I mean, is it playing in, is to his motive, and or is premeditation relevant here? So, the short answer for any question related to the domestic relationship, it's all certainly relevant, and I think, you know, what I want to address is the state is suggesting these issues were ignored. That's the verb they suggest at the lower court, and that is incorrect. This, and I say this is a complex issue, requires a court to juggle numerous lines of different types of evidence, direct evidence, implicit evidence, and which is why the, it was reasonable for the court to undertake this analysis of, was there problems with the support agreement? For example, it was $12,000 that was alleged to have been, was going to be delivered. Correct. If there was evidence in the prior months that he was failing to meet his obligations, then certainly that $12,000 becomes relevant. Well, there was evidence. She didn't have the money to pay for the car payment. She couldn't pay $75. That's real and circumstantial evidence. I think the totality of the evidence, though, suggests that as far as their agreement, we don't know what the agreement was. Correct. We can't ask Taish about what the agreement was. All we know is that she was threatened that she better remove the garnishman, otherwise he's going to take her to court. He's going to sue her. That was what he said to her. That's what he said to the police. That's what he said. He told the police he said that to her, but he threatened her. And what, may I ask then, what other, if the State only has to prove it's a motive, not the motive, what other evidence is there of motive? The evidence of motive is limited in this case in regards to, like, as we, because we dispute the findings in prong one certainly was found under the preponderance of the evidence standard. We dispute that he did cause the disappearance of Ms. Bell. Well, that was, I'm not analyzing that. As far as possible motive, there, other than the domestic relationship itself, there was no other outside motive that has been established or introduced by the State. His, according to what he had said, his wife was aware of the relationship. She certainly was. So it was not something that was kept from her. So that couldn't be the motive. Correct. And the evidence is, would you agree that the phone calls, especially, and the lies for the police are, even though you may disagree with it, it's very relevant to whether or not he is the killer. He's the last person known to speak to her. It can be relevant, yes. And he lied about the phone records. It certainly is relevant. We would, I would call it at the, you know. He said somebody else used his phone and put it back. That is what he said. That's correct. And somebody else? He said he didn't know. Somebody else that Amy Brown had a relationship with, Taisha Bell? I believe that is what he said, yes. So, Judge, to the Court, I would reiterate that the inquiry by the lower court was reasonable. Attempting to understand the dynamics of the relationship, and it was given, especially the fact that the state at the motion argued strongly that this was escalating demands is what triggered this intent. And the court was, did the inquiry that in its brief claims was not done. She examined the scope of the relationship. She examined direct evidence of coercion or acrimony. She found very little. She examined the details of their relationship. She found that Ms. Bell was advocating for herself and had not voiced any disapproval with the support agreement. And taking the factual inquiry based on a doctrine which is relatively new in the state of Illinois. I know the state references Peterson as, we all agree, as foundational in regards to forfeiture by wrongdoing. There has been no significant case that I think really gets to, whether it gets to the heart of implicit evidence in a case like this. It was argued at the lower court, let me just. You're good, go ahead. Okay. It was argued that to find that given these factors, given the details of this agreement, and given the limited evidence suggesting she was unhappy or limited evidence that the case was going to be restarted again. It was argued that this would be an extension of the forfeiture doctrine. I would submit that perhaps maybe that's not a controversial statement given the lack of, case law also given that these relationships, each relationship is different. They must be examined individually. Perhaps any ruling for any on the forfeiture doctrine that concerns a domestic relationship would be an expansion. But the court, when assessing whether it was arbitrary or unreasonable, certainly evaluated all the evidence. And I do want to strongly, I can't say strongly because the state really attempted to show that she was ignoring certain evidentiary issues. That's not true. She examined this case consistent with the case law. It was a difficult decision, especially the fact that she found wrong one. And I cited to another Utah case where another judge found wrong one. I think once you get wrong, it's a solemn duty, right, to find that wrong two has not been met. It's done because the confrontation clause is an important protection for defendants. The court exercised that discretion, did so reasonably, carefully to find that she, otherwise I think would abuse the principles of this strong standard of manifest way to the evidence. And it would signal to other courts, well, I have a question. No, go right ahead. On that point, doesn't Peterson make clear that the trial court or this court should be making credibility determinations regarding what Tyisha Bell meant when she told her friend who heard, or told the defendant, and her friend heard her say that he better support her or otherwise she's going to go back and get child support. I mean, it seems to me that you're making a credibility determination, that the trial court didn't believe it, that that was a threat. Those plain words are threatening. If I may, I don't believe it is a credibility determination. I think it's a factual inquiry in regards to what was said. Exactly. And that because she appeared to be happy with the arrangement, that she can't find that to be a threat. Well, for example, that's what the court said. If a litigant walks out in a legal proceedings with a domestic relationship and walks out and is pissed off or unhappy, if a number of years go by and that proceeding continues, I think the evidence of acrimony, she's drawing an inference. The inferences should be drawn by the finer effect at a trial. She threatened to take the defendant back to court to enforce the child support. I would argue that it was not a credibility determination. That was a contextual in that, you know, given that Ms. Wildsensor did not disclose that outright, it was only after she said there were no issues with the support and he said, why is that? The reason she gave is what was crucial. But the other witnesses said the opposite of that. That she was unhappy with the support? Yes. None. And that was a principal thing that the court not only relied, but also relied on the fact that she was the type of person who would have spoken out. The night before the murder, she's overheard arguing with him on the phone. At the mall. Yeah. Yeah, they're arguing. And then she tells her friends he's promised to deliver $12,000. That is correct. The defendant from the get-go was not happy about having his wages garnished. Based on the statement to the officer. Right. I believe these were all matters that come into the scope of the inquiry. That's correct. You talk about timing and why it's so long, the timing between her dissatisfaction versus the charges. But she was missing for seven years. She was a missing person for seven years, right? What I'm referring to is the evidence that the underlying action was found to be dismissed in 2002. Right. And that she, her disappearance was several months later, in May of 2003.  And that was, I think, was relevant to the court was during those months examining what was relevant to the action, how the action was proceeding. Was there an agreement or disagreement as to, was there any acrimony as to their, this agreement, was it taking place in the manner that they intended? And she found, based on the review of the evidence, that it was. But there was no agreement that she could rule on. There was no actual agreement. It was called without giving the specifics of the agreement. That's right. Is there anything else you'd like to add, sir? No. I rest on that. Thank you. Okay. Thank you. Mr. Barrett, you have an opportunity for rebuttal. You know, Mr. Brown pointed out the importance of the Confrontation Clause and how vital it is to our Constitution and court proceedings. How should the court, our court, look at reversing the trial court when she clearly took that into consideration? Well, the Confrontation Clause, sort of under the forfeiture by wrongdoing doctrine, you look at it almost like you look at hearsay. Well, it's an exception. It's an exception. Absolutely. And it's an exception to that because the victim doesn't exist. The victim was murdered. She can't testify. She can't appear in court. And where there's some evidence of a motive to kill the victim to prevent that testimony, that extinguishes any issues with Confrontation Clause or hearsay. So, now just a couple of points that I wanted to address that counsel brought up. Jamaica Nocencio, the friend who had been giving statements to detectives about the victim receiving child support, those questions had nothing to do with the sufficiency of the child support. She confirmed, yes, she received some support from the defendant. Period. End of story. There was nothing about the sufficiency of it. And clearly, based on the totality of the circumstances, is what we do here as we look at the totality of the circumstances, is that, yes, she received support, but no, the support wasn't sufficient. She wasn't able to meet the basic car payments. But child support is for the child, not for other things, isn't it? Right, but we have to kind of examine that she did have child support for a period of time and then agreed to discontinue the child support in favor of what? Some kind of other cash payments from defendant? There's clearly a give and a take here. Those are related. There was one occasion someone else picked up the money for her and it was $400. Right. So it shifts around 20s and 50s, maybe a few hundred dollars here, maybe some months, nothing. It wasn't consistent and it wasn't sufficient, and we know that. And we know a few days before she died, she was expecting either I'm going to go back to court or you're going to give me something so I can buy a car. My car was repossessed. Four days prior to her murder, her car was repossessed. This is not, this is a breaking point. This is not an indication that, oh, everything's fine. And, you know, that was my question in the beginning. You're saying the state is submitting that it's child support and he's trying to stop her from talking about child support. But what if he just wanted to kill her because she was holding him up for money? Is that eligible for doctor forfeiture by wrongdoing? If the motive to kill her was not so she wouldn't testify against him but because he was sick and tired of her asking him for money? The evidence was that she was after child support. She had initiated child support proceedings in 2001. Years ago, right. And we know she wasn't getting sufficient compensation for her and the child. So there's no indication in the record this is some other kind of extortion going on. This is a mother who is at her wit's end, at a breaking point, immediately before she was murdered. So the state, based on all of that, the state would implore this court to give this victim a voice and let her statements in at trial by reversing the decision of the trial court and remanding with directions that the court allow the statements to be used at trial. Thank you. One moment, counsel. Do you have any further questions of Justice Small? Thank you very much. Gentlemen, thank you so much for the time here today. We appreciate your arguments. We will take this case under consideration, render a decision in due course.